George Julius Gehron
Cheryl Lee Gehron
25079 Portica Court
Wildomar, California 92595
In Pro Per

(951) 677-6825 (Fax)

IN THE UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

RIVERSIDE DIVISION

ED   CV  11  -  00012 DOC

(DTBx)

| | |
|---|---|
| GEORGE J. GEHRON and CHERYL L. GEHRON, | Case No.:_____ |
| Plaintiffs, | **COMPLAINT UNDER SECURITIES** |
| vs. | **EXCHANGE ACT OF 1934- CHURNING** |
| NATIONPOINT( a/k/a FIRST FRANKLIN FINANCIAL CORPORATION a/k/a MERRILL LYNCH BANK & TRUST CO.), BANK OF AMERICA, N.A., LASALLE BANK, N.A., MERRILL LYNCH, BAC HOME LOANS SERVICING, LP, a/k/a NATIONPOINT LOAN SERVICES and HOME LOAN SERVICES, INC. d/b/a FIRST FRANKLIN LOAN SERVICES (HLS), T.D. SERVICE COMPANY, FIDELITY NATIONAL TITLE COMPANY, MERS (MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.), et al. | **OF ACCOUNT** |
| Defendants. | |

Plaintiff(s), GEORGE J. GEHRON and CHERYL L. GEHRON ("GEHRON"), for its complaint

against defendants NATIONPOINT, ("NationPoint"), BANK OF AMERICA, N.A. ("B of A"),

LASALLE BANK, N.A. ("Lasalle"), MERRILL LYNCH ("Merrill Lynch"), BAC HOME

LOANS SERVICING, LP ("BAC")  a/k/a NATIONPOINT LOAN SERVICES ("NLS") and

FEE PAID

HOME LOAN SERVICES, INC. d/b/a FIRST FRANKLIN LOAN SERVICES (HLS) ("HLS"), T.D. SERVICE COMPANY ("TD"), FIDELITY NATIONAL TITLE COMPANY ("Fidelity Title"), and MORTGAGE ELECTRONIC REGISTRATION SYSTEM, INC. ("MERS") (collectively, "Defendants"), allege as follows:

## PARTIES

1. At all relevant times, Plaintiff maintains residency and operates and conducts Office of the "Trustee" in the ordinary course of daily business in California.

2. Plaintiffs are informed and believe, and on that basis allege that, at all relevant times, defendant(s) NationPoint, B of A, Lasalle, Merrill Lynch, BAC, NLS, HLS, TD, Fidelity Title, MERS, were corporation(s) organized and operating under the laws of the United States of America, and were duly licensed to engage in the business of securities broker, securities broker, securities dealer, and investment adviser, and was a member firm of the National Stock Exchange Inc., and the National Stock Exchange Inc., subject to their respective Constitutions and Rules, as well as a member of the Securities Exchange Commission subject to its Rules.

3. Plaintiff is informed and believes, and on that basis alleges that, at all relevant time's defendant(s) NationPoint, B of A, Lasalle, Merrill Lynch, BAC, NLS, HLS, TD, Fidelity Title, MERS, were registered representative(s), engaged in business as a securities salesperson, and an officer(s) and employee(s) of NationPoint, B of A, Lasalle, Merrill Lynch, BAC, NLS, HLS, TD, Fidelity Title, MERS.

4. At all relevant times defendant(s) NationPoint, B of A, Lasalle, Merrill Lynch, BAC, NLS, HLS, TD, Fidelity Title, MERS acted as a debt collector for a "Mortgage Debt", duly authorized to conduct business in the United States of America duly licensed to engage in the business of securities broker and securities dealer, and was a member firm of the National Stock Exchange, Inc., the National Stock Exchange, Inc., subject to their respective Constitutions and Rules, as well as a member of the Securities Exchange Commission, subject to its Rules.

5. All of the defendants maintained their offices for the transactions of their business at: ***NATIONPOINT: 25530 COMMERCENTRE DRIVE, LAKE FOREST, CA. 92630; BANK OF AMERICA, N.A.: 100 NORTH TRYON STREET, CHARLOTTE, NC 28202; LASALLE BANK, N.A.:135 SOUTH LASALLE STREET, SUITE 1825,***

CHICAGO, IL 60603; MERRILL LYNCH: 222 BROADWAY, 17TH FLOOR, NEW YORK, NY 10038-2510; BAC HOME LOAN SERVICING, LP: 2505 W. CHANDLER BLVD., CHANDLER, AZ 85224; NATIONPOINT LOAN SERVICES & HOME LOAN SERVICES, INC.: 150 ALLEGHENY CENTER MALL, PITTSBURGH, PA 15212; FIRST FRANKLIN LOAN SERVICES (HLS): 2150 NORTH FIRST STEET, SAN JOSE, CA 95131; T.D. SERVICE CO.: 1820 E. 1ST STREET, #210, SANTA ANA, CA 92705; FIDELITY NATIONAL TITLE: 601 RIVERSIDE AVENUE, JACKSONVILLE, FL 32204; and MERS: 3300 SW 34TH AVENUE, SUITE 101, OCALA, FL. 34474 within the territorial confines of the United States of America.

6.  At all relevant times, defendant's officers and directors acted as clearing agent for defendant(s) NatiionPoint, B of A, Lasalle, Merrill Lynch, BAC, NLS, HLS, TD, Fidelity Title, MERS transactions for GEHRON, customers.

## JURISDICTION

7.  The Trustee brings this action pursuant to the authority conferred by _Section 21(d)_ of the Exchange Act _15 U.S.C. §78u(d)_ seeking to restrain and enjoin permanently Best, Shirilla, Cumanet, Assured, and Mers from violating Section 14(a) of the Exchange Act _15 U.S.C. § 78n(a)_ and _Rule 14a-9_ thereunder _17 C.F.R. §240.14a-9_. The Trustee also seeks a final judgment ordering Best, Shirilla, Cumanet, Assured, and Mers to pay a civil money penalty pursuant to _Section 21(d)(3)_ of the Exchange Act _15 U.S.C. §78u(d)(3)_ and such equitable and other relief that may be appropriate or necessary for the benefit of investors _15 U.S.C. §78u(d)(5)_.

8.  This action arises under the _Securities Act of 1933_ and the _Securities Exchange Act of 1934_, as amended, and _Rules 10b-5_ of the General Rules and Regulations promulgated by the _Securities and Exchange Commission, Rule 12(2)_ of the Rules of the _Exchange Act Rule 20(a)_ of the Rules of the National Stock Exchange, so that this court has jurisdiction over the matter under _15 U.S.C. §§ 77v, 78aa_ and _28 U.S.C. § 1331_ as well as the principles of supplemental jurisdiction.

## HISTORY ON SECURITIZATION

9.  The traditional mortgage model involved a bank originating a loan to borrower/homeowner and retaining the credit (default) risk. With the advent of securitization, the traditional model has given way to the "originate to distribute" model,

in which banks essentially sell the mortgages and distribute credit risk to investors through mortgage-backed securities. Securitization meant that those issuing mortgages were no longer required to hold them to maturity. By selling the mortgages to investors, the originating banks replenished their funds, enabling them to issue more loans and generating transactions fees. This created a moral hazard in which an increased focus on processing mortgage transactions was incentivized but ensuring their credit quality was not. (1),(2)

10. Securitization accelerated in the mid-1990. The total amount of mortgage-backed securities issued almost tripled between 1996 and 2007, to $7.3 trillion. The securitized share of subprime mortgages (i.e., those passed to third-party investors via MBS) increased from 54% in 2001, to 75% in 2006. (3) American homeowners, consumers, and corporations owed roughly $25 trillion during 2008. American banks retained about $8 trillion of that total directed as traditional mortgage loans. Bondholders and other traditional lenders provided another $7 trillion. The remaining $10 trillion came from securitization markets. The securitization markets started to close down in the spring of 2007 and nearly shut-down in the fall of 2008. More than a third of the private credit markets thus became unavailable as a source of funds. (4)(5) In February 2009, Ben Bernanke stated that securitization markets remained effectively shut, with the exception of conforming mortgages, which could be sold to Fannie Mae and Freddie Mac. (6)

11. A more direct connection between securitization and the subprime crisis relates to a fundamental fault in the way that underwriters, rating agencies and investors modeled the correlation of risks among loans in securitization pools. Correlation modeling-determining how the default risk of one loan in a pool is statistically related to the default risk for other loans-was based on a "Gaussian copula" technique developed by statistician David X. Li. This technique, widely adopted as a means of evaluating the risk associated with securitization transactions, used what turned out to be an overly simplistic approach to correlation. Unfortunately, the flaws in this technique did not become apparent to market participants until after many hundreds of billions of dollars of ABS and CDOs backed by subprime loans had been rated and sold. By the time investors stopped buying subprime-backed securities, which halted the ability of mortgage originators to extend subprime loans; the effects of the crisis were already beginning to emerge. (7)

12. Nobel laureate Dr. A. Michael Spence wrote: "Financial innovation, intended to redistribute and reduce risk, appears mainly to have hidden it from view. An important challenge going forward is to better understand these dynamics as the analytical underpinning of an early warning system with respect to financial instability." (8)

13. Both government failed regulation and deregulation contributed to this crisis. In testimony before Congress both the Securities and Exchange Commission (SEC) and Alan Greenspan conceded failure in allowing the self-regulation of investment banks.(9)(10)

## STATEMENT OF FACTS

14. On or about March 25th, 2007, Defendant assigned the property to itself through a "Corporate Assignment" a transaction that took place at arm's length; alleging Plaintiff was "Grantor" with the Defendants on real property which is situated in California.

15. Plaintiff is represented by Cheryl-Lee: Gehron and George-Julius: Gehron, Secured Party Creditor and Trustee of the "GEHRON FAMILY EXPRESS TRUST", duly authorized by the Internal Revenue Service to act on all matters regarding the appropriation and administration of the estate.

16. On or about March 18th, 2009, Defendants filed a foreclosure action against the Plaintiff on the property.

17. On or about August 11th, 2010 through September 30th, 2010, defendants alleged that they lost the note and or it was destroyed, which both statements were unintelligible and ambiguous, fraudulent by knowing full well the note was securitized and sold in connection with a public offering.

18. On or about July 25th, 2010, Plaintiff was informed that the account on the said mortgage was securitized and sold on the New York Stock Exchange, however, it was upon the Plaintiffs discovery the accounts associated with the "Mortgage" and "Note" were pooled and being traded through Fidelity Funds.

19. On or about September 3rd, 2010, Plaintiff securitized the said property, by preparing a Uniform Commercial Code Financial Statement filed with the California Secretary of State, which was a "fixture filling" and was perfected under U.C.C. Article 9.

20. On or about August 11th, 2010, Plaintiff served actual and constructive notice to the Defendants regarding a letter of *"Notice of Right to Cancel"* under the *"Truth in Lending*

*Act", 15 U.S.C. §1601 et seq; 12 C.F.R. Part 226)*, yet, Defendants ignored the Plaintiffs requests, which were based on the discovery of fraud, inducement, concealment, and fraudulent misrepresentation, civil conspiracy.

21. On or about July 15th, 2010, Plaintiff discovered that the Defendants had acquired funds through the *"Discount Treasury Window"* and borrowed against the Plaintiff, GEORGE J. GEHRON'S, Federal Bond #B1443XXXX (2nd District), Account #0210-0120-8, associated with S.S.N. XXX-XX-2856, which both are jurisdictionally located in the United States of America.

22. On or about July 15th, 2010, Plaintiff discovered that the Defendants had acquired funds through the *"Discount Treasury Window"* and borrowed against the Plaintiff, CHERYL L. GEHRON'S, Federal Bond #D4101XXXX (4th District), Account #0410-0001-4, associated with S.S.N. XXX-XX-4960, which both are jurisdictionally located in the United States of America.

23. On or about August 23rd, 2010, Plaintiff is informed and believes that the Defendants failed to claim the funds on the property by neglecting to file an Original Issue Discount with the Internal Revenue Service, and therefore, has abandoned the funds or has failed to appropriately report income from their hedging activity.

24. On many occasions Plaintiff requested validation of the debt and requested various document in which the Defendants have failed to produce, i.e. *(FR2046)* OMB: 7100-0289 Accounting Statement revised form OMB- 7100-0289 *"Balance Sheet for Discount Window Borrowers"* to show the appropriation of the funds and location of the pooled securities, and as further required by the Board of Governors of the Federal Reserve System.

25. On or about August 26th, 2010, Plaintiff conveyed the property into an existing "Express Trust" to solidify the true Secured Party Creditors position and interests.

26. At no time mentioned did the Defendants disclose the actions and procedures of the securitization process, nor did it disclose the benefits and disadvantages to hedging the account, nor did it provide a valid executed shareholder agreement, pledge agreement, or any disclosures in relation to the said Fidelity Funds.

27. At all relevant times, defendants, as a result of the control exercised over plaintiffs' brokerage accounts, had a fiduciary duty and standard of care to plaintiffs in all of their transactions with and for the plaintiffs.

28. At all relevant times, defendants had the duty not to use or employ in connection with the purchase and sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of the Rules and Regulations promulgated by the Securities & Exchange Commission as necessary or appropriate in the public interest or for the protection of investors.

29. At all relevant times, defendants had the duty under the statutes, rules, and regulations cited above to use due diligence, to have learned the essential facts relative to plaintiff and to operate plaintiffs' brokerage accounts in a fashion that would not cause an excessive trading or selling or purchasing securities without regard to plaintiffs' situation and instructions.

30. At all relevant times, defendants had the common-law fiduciary duty, as well as the duty under the statues, rules, and regulations cited above, to recommend to plaintiff and to sell or purchase for plaintiff only those securities that they had reasonable grounds for believing were suitable for plaintiff on the basis of the facts disclosed by plaintiff to defendant regarding GEHRON and their financial situation and needs. Defendant also had the common-law fiduciary duty to have had reasonable grounds to believe that any sale or purchase of securities made by defendants for plaintiffs' accounts were suitable for plaintiffs on the basis of information furnished by plaintiffs to defendants after reasonable inquiry concerning plaintiffs' investment objectives, financial situation, needs and any other information known to defendants.

31. On or about March 25th, 2007, Plaintiffs obtained a certain line of credit a "Mortgage", which at all times relevant was a "Consumer Debt" from the defendant(s). This allegation supports an element of this cause of action, in that the transactions and account numbers were made in connection with a public offering.

32. On or about March 25th, 2007, while Plaintiffs obtained a certain line of credit from defendant, however, there were untruths or omissions by defendants of which the plaintiff did not know at the time of the offer or sale.

33. On or about March 25th, 2007, after the creation of the accounts without Plaintiff's knowledge, by the use of any means of interstate commerce of the mails, without a security agreement between the Plaintiff (which indicated the details of the transactions), with no fiduciary relation between the parties and Defendant, Defendant initiated a business deal from arm's length, which constitutes the charge as concealment. *See Swinton v. Whitinsville Savings Bank, 42 N.E. 2d 808 (Mass. 1942),* concealment of the fact, without making any verbal misrepresentation. *See Osborn v. Gene Teague Chevrolet Co., 459 P.2d 988 (or 1969).*

34. It is a general rule of nondisclosure with a long list of exceptions, the last of which requires disclosure of "fact basic to the transaction, if the Defendant knows that the other is about to enter into it under mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts." The provisions is illustrated as follows: A sells to B a dwelling house, without disclosing to B the fact that the Note was going to be sold to New York Stock Exchange and traded publicly in a pool of mortgages and due to accrue for up to the maturity of the Security Instrument, earning up to nine times the amount of the original note. *See Restatement (Second) of Torts §551*

35. Plaintiff only received partial disclosure in the Mortgage Instrument, as on covenant of the Contract states the Note may be sold but provides no specificity and is extremely ambiguous; Even where there is no general duty to speak, partial disclosures are not allowed: "one who voluntarily elects to make a partial disclosure is deemed to have assumed a duty to tell the whole truth, i.e., to make full disclosure, even though the speaker was under no duty to make the partial disclosure in the first place." *See Union Pacific Resources Group, Inc. v. Rhone-Poulenc, Inc., 247 F.3 574, 584 (5th Cir. 2001).*

36. On or about March 25th 2007, defendants purchased for plaintiffs' account #:
**#33348077-06/100425240013888802/4001388880/1044889733** "Instrument"
*"CORPORATE ASSIGNMENT OF MORTGAGE"*

| **NAME OF STOCK** | **NUMBER OF SHARES** | **PRICE** |
|---|---|---|
| **FIDELITY OHIO MUNICIPAL** | **UNKOWN** | **____per share** |
| **INCOME FUND** | | |

**CUSIP NUMBER #316412105 / FUND #88 / SYMBOL=FOHFX**

& On or about September 15th, 2010, defendants purchased for plaintiffs' account #:

**#D383635/4049660-DM/4001388880/1044889733/FC20492/76299432** "Instrument"

*"CORPORATE ASSIGNMENT OF MORTGAGE"*

| NAME OF STOCK | NUMBER OF SHARES | PRICE |
|---|---|---|
| **FIDELITY INTERMEDIATE** | **UNKNOWN** | ____per share |
| **BOND FUND** | | |

**CUSIP NUMBER #315912105/FUND #32/CLASS #A/SYMBOL=FTHRX**

37. During the period described above, the defendants wrongfully exercised control and dominion over plaintiffs' brokerage accounts in violation of express conditions given to defendants at the time that the account was opened. In particular, the defendants executed multiple separate transactions during this period.

38. By use of means and instrumentalities of interstate commerce and of the mails, and the facilities of National securities Exchanges, defendants employed a device, scheme, and artifice to defraud plaintiffs, and defendants engaged in a practice and course of conduct that operated fraud on plaintiffs in connection with the purchase and sale of securities. Among other things, defendants wrongfully manipulated plaintiffs' account(s) with excessive sell and buy orders in a manner disproportionate to its size, character, and the objectives and instructions of plaintiffs, bought and sold securities within short periods of time, switched securities from one to another without any investment justification other than to generate brokerage commissions for defendants' profit, executed transactions in violation of plaintiffs' specific instructions, continuously maintained plaintiffs' account at maximum or near maximum allowable margin, thus endangering plaintiffs' investments in any declining market, and used plaintiffs' account in margin transactions to obtain maximum commissions on executed orders.

39. The actions of Defendants were not suitable to plaintiffs' purchasing objectives, financial situation, and needs and were in violation of plaintiffs' express instructions, the anti-fraud provisions of the statutes, rules, and regulations cited above.

40. In connection with the transactions described above, defendants failed in their fiduciary duty to plaintiffs.

41. On or about March 25th, 2007, NationPoint, B of A, Lasalle, Merrill Lynch, BAC, NLS, HLS, TD, Fidelity Title, MERS sold to Plaintiffs an undisclosed number of shares of stock in Fidelity Investments for an unknown price, plus commission and other fees.

42. Prior to Plaintiffs discovering that Defendants had committed a conversion of a security instrument, Plaintiffs received from a secure source a detailed report thereof accounts being publicly trading and illegally withheld from Plaintiff.

43. Any written prospectus covering the shares offered and sold to Plaintiff failed to disclose that:

    a. NationPoint, B of A, Lasalle, Merrill Lynch, BAC, NLS, HLS, TD, Fidelity Title, MERS were very profitable and business was continuing to expand while it concealed the existence of an account, in the Plaintiffs' possession with an unknown value as of the date of this complaint.

    b. NationPoint, B of A, Lasalle, Merrill Lynch, BAC, NLS, HLS, TD, Fidelity Title, MERS encumbered the said funds and had accounts receivable of in excess of accounts payable and other debts totaling $370,500.00 while failing to prove ownership.

44. Plaintiffs still own the subject shares of the Fidelity Investment Funds.

45. Defendants directly, by the use of a means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange, intentionally devised, and schemed to artifice to defraud.

46. Defendants engaged in the act and practice during the ordinary course of business which operated fraud and deceit upon Plaintiffs in connection with the purchase or sale of any security which violates *17 C.F.R. §240.10b-5 (1997)* also *See U.S. v. O'Hagan, 117 S. Ct. 2199, 2207, 138 L. Ed. 2d 724 (U.S. 1997)* the private right of action under section *10(b) and Rule 10b-5.*

47. Plaintiffs have the remedial right and remedy under *U.C.C. 1-201 (32) (34)*, inter alia, to invoke their Right of Rescission as further evidence of the fraud committed.

48. By virtue of the foregoing conduct, NationPoint, B of A, Lasalle, Merrill Lynch, BAC, NLS, HLS, TD, Fidelity Title, MERS; directly or indirectly, violated *Section 14(a)* of the Securities Exchange Act of 1934 ("Exchange Act") *15 U.S.C. §78n(a)* and *Rule 14(a)* thereunder *17 C.F.R. §240.14a-9.* Unless permanently restrained and enjoined, the

Defendants will again engage in the acts and transactions set forth in this complaint or in acts and transactions of similar type and object.

### *FRAUD ON THE MARKET THEORY*

49. In *Basic*, supra note 2, the Supreme Court approving using the "fraud on the market" theory in federal securities cases. Quoting from *Peil v. Speiser, 806 F.2d 1154, 1160-1161 (3rd Cir. 1986)*, it observed:

> *"The fraud on the market theory is based on the hypothesis that, in an open and developed securities market, the price of a company's stock is determined by the available material information regarding the company and its business.....Misleading statements will therefore defraud purchasers of stock even if the purchasers do not directly rely on the misstatements.... The causal connection between the defendants' fraud and the plaintiffs' purchase of stock in such a case is no less significant than in a case of direct reliance on misrepresentation."* See generally *Fischel, Use of Modern Finance Theory in Securities Fraud Cases, 38 Bus. Law. 1 (1982)* also See *Gilson and Kraakman, The Mechanics of Market Efficiency, 70 Va. L. Rev. 549 (1984)*, See *Kaufman v. I-Stat Corporation, 754 A.2d 1188 (N.J. 2000)*.

50. "Failure of the Plaintiff to discover the falsity of a statement is no defense when the misrepresentation was intentional rather than negligent." *See Seeger v. Odell, 115 P.2d 977, 980 (Cal. 1941)*, In *Teamsters Local 282 Pension Trust Fund v. Angelos, 762 F.2d 522, 528 (7th Cir. 1985)* explained the rule in holding that the failure of a trustee to investigate did not relieve the Defendant of liability for securities fraud.

*"Securities law seeks to impose on issuers duties to disclose, the better to obviate the need for buyers to investigate. The buyer's investigation of things already known to the seller is a wasteful duplication of effort. If the securities laws worked perfectly there would be little need for investigation; sellers would disclose to the buyer and the market the information necessary for informed trading. Because some frauds will not be caught, and because people cannot interpret information flawlessly, this mechanism cannot work perfectly."*

*"This failure makes investigations by investors necessary and creates incentives for sellers to hire certifiers (such as auditors and investment bankers) to verify sellers'*

*statements. But such investigations and other devices are distinctly second-best solutions to legal and practical problems, and we will not establish a legal rule under which investors must resort to costly self-help approach of investigation on pain of losing the protection of the principal legal safeguard, the rule against fraud." See Edgington v. Fitzmaurice 29 Ch. 459 (1885).*

51. Beginning on or about March 25th, 2007, and at various other times thereafter, Defendants met, joined together, planned, and conspired to transfer and conceal assets of NationPoint, B of A, Lasalle, Merrill Lynch, BAC, NLS, HLS, TD, Fidelity Title, MERS for the purpose of rendering NationPoint insolvent and unable to pay his creditors, including Plaintiff, by creating fictitious debts owed by NationPoint to MERS and by making electronic payments and transfers of tangible assets to JOHN DOE TRUST in purported payment of such debts.

52. All of the named Defendants agreed or understood that the purpose of their meetings and agreements was as described in Paragraph 51, understood that both their purpose and their methods of achieving this purpose were unlawful and would result in injury to Plaintiffs and others, and agreed and understood that each would act in concert with the others to achieve this purpose.

53. Beginning on or about March 25th, 2007, and continuing until the present time, and in furtherance of the conspiracy described in Paragraph 51, Defendants, NationPoint, B of A, Lasalle, Merrill Lynch, BAC, NLS, HLS, TD, Fidelity Title, MERS, purportedly acting on behalf of NationPoint, have issued checks in the amount of at least the amount as set forth herein written upon NationPoint accounts, and transferred business inventory valued at not less than the amount as set forth herein to themselves and to MERS. Defendants, NationPoint, B of A, Lasalle, Merrill Lynch, BAC, NLS, HLS, TD, Fidelity Title, MERS have transferred, concealed, and dissipated the aforementioned funds and assets as they have received them, thus making it impossible or prohibitively expensive to trace and recover them. Defendant, NationPoint, presently claims to be insolvent and unable to satisfy its debts, including those owed to Plaintiffs.

54. Defendants undertook the acts described in Paragraph 51 with malice and intent to injure Plaintiffs, among others.

55. Defendants, NationPoint, B of A, Lasalle, Merrill Lynch, BAC, NLS, HLS, TD, Fidelity Title, MERS, undertook the acts described in Paragraph 51 for their unlawful personal gain, and did so neither for the benefit of, nor while acting in the role of lawful agent for, NationPoint.

56. The acts described in Paragraph 51 were both unlawful and tortious, constituting conversion of corporate assets and the unlawful conveyance of property in defraud of creditors.

57. As a result of the acts described in Paragraph 51, Defendant, NationPoint, have been rendered insolvent and unable to pay its debts. Plaintiffs have consequently been unable to satisfy the judgment against Defendant, NationPoint, B of A, Lasalle, Merrill Lynch, BAC, NLS, HLS, TD, Fidelity Title, MERS, described in Paragraph 3 or to otherwise recover upon the debts lawfully owed by Defendant. Plaintiffs have incurred expenses in the amount of $18,000.00 in attempting to collect such debt and has suffered further loss in the amount of $25,000.00 as a result of the loss of the use of such funds. Plaintiff has thereby incurred pecuniary losses in the amount of $42,000.00.

58. Unless prevented by appropriate injunctive measures, Defendants will continue to inflict injury upon Plaintiffs by continuing to conceal assets of NationPoint, B of A, Lasalle, Merrill Lynch, BAC, NLS, HLS, TD, Fidelity Title, MERS and engaging in various deceptive measures intended to prevent discovery and recovery of such assets by lawful creditors of NationPoint, including Plaintiff.

## COUNT I

## <u>BANKING ACT OF 1933</u>

### (Glass-Steagall Act Request for Reinstatement Repealed Parts)

59. Plaintiffs repeat each and every allegation contained in Paragraph 1 through 58, as though fully set forth here.

60. Defendants at any time mentioned never disclosed its underwriting process associated with the corporate securities or disclosed to the Plaintiffs its incorporated affiliates i.e. 'private investment banks".

COMPLAINT UNDER SECURITIES EXCHANGE ACT OF 1934-CHURNING ACCOUNT

61. This Act provides strict policies preventing investment banking activities of commercial banks and forces them to withdraw completely from important segments of the investment banking business.

62. The legislative intend of this Act was that it would prevent securities affiliates from over extending themselves in investing and trading in speculative securities and related markets, which was intended to deter reckless behavior which leads to economic disaster.

**COUNT II**

**SECURITIES FRAUD UNDER 15 U.S.C. § 6801 (The Gramm-Leach-Bliley Act)**

63. Plaintiffs repeat each and every allegation contained in Paragraph 1 through 58 specifically, as though fully set forth here.

64. Defendants failed to adhere to The Safeguard Rule which require plans to "protect clients", nonpublic information.

65. Defendants have not denoted at least 1. one employee to manage the safeguards 2. Constructing a "risk management" on each department handling nonpublic information 3. Develop, monitor, and test a program to secure the information 4. Change the safeguard as needed with the changes in how information is collected, stored, and used.

66. Defendant is obligated under this act and is forced to take a closer look at how they manage private data and to do a risk analysis on their current process.

67. Defendant manipulated and deceptively devised and or contrivance in contravention of such rules and regulations as the Commission set forth appropriately in the best interest of the public and for the protection of investor, also see, section *206B of the Gramm-Leach-Bliley Act.*

68. At all times mentioned Defendants did not provide or disclose to the Plaintiffs the right in which a privacy notice gives the consumer a right to "opt out", Plaintiffs did not enjoy this inherent right.

**COUNT III**

**SECURITIES FRAUD UNDER SECURITIES EXCHANGE ACT OF 1934 § 10(b)-5**

69. Plaintiffs repeat each and every allegation contained in Paragraphs 1 through 58, as though fully set forth here.

70. Defendants in the ordinary course of business presented a material omission or misstatement in a proxy statement which is linked to the original transaction regarding

the loan which was in turn converted to an investment account and Defendants such actions have resulted in economic harm to the Plaintiffs.

71. As a result of the actions of defendants, plaintiffs have been deprived of the specific securities that plaintiffs wish to retain, as set forth above.

72. The transaction in dispute included an untrue statement of material fact or omitting a material fact; *15 U.S.C. § 77q (a) (3)* engaged in a transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

73. *Securities Regulation 60.28(4)* cites, an insider in possession of material non-public information is prohibited by Federal Securities Exchange laws from trading on the information unless he makes public disclosure.

74. Defendants acted with scienter by way of their reckless business practices as a result of the investment trading associated with the loan, required a document to be filed with the Securities and Exchange Commission, which Defendants failed to produce, Plaintiffs contend on the prima facia evidence that the registrations statement does not exist.

**COUNT IV**

**VIOLATIONS UNDER THE TRUST INDENTURE ACT OF 1939**

75. Plaintiffs repeat each and every allegation contained specifically in Paragraphs 1 through 58 as though fully set forth here.

76. Defendant engaged in the trading and selling of the Plaintiffs' note and sold it and made a public offering without offering a trust indenture which conformed to any statutory provision.

77. The Act provides protection to investors by way of a trust indenture of its faithful duties in behalf of the purchasers of the securities.

78. Trustees or in other words fiduciaries are held to high standards of conduct under this Act, where the Defendants fall short.

79. Also this Act requires trustees to be a corporation with minimal combined capital and surplus, which is contrary to the Defendants' actual and current situation.

80. Defendants at all times mentioned have produced reports and notices to the security holder, the Plaintiffs.

## COUNT V

### SECURITIES FRAUD UNDER SECURITIES EXCHANGE ACT OF 1934 § 12

81. Plaintiffs repeat each and every allegation contained in Paragraphs 1 through 58 as though fully set forth here.

82. This cause arises from a connection with a public offering *See In re Syntex Corp. Securities Litigation, 855 F. Supp. 1086, 1098 (N.D. Cal 1994), aff'd 95 F. 3d 922 (9th Cir. 1996).*

83. Plaintiffs did not consent or provide and application as set forth in *Sec. 12 (b)* of the Securities Exchange Act of 1934.

84. As a result of the actions of the defendants in purchasing the securities described above, plaintiffs have had added to GEHRON's account securities that they did not wish to own, which have declined substantially in price since the purchase by defendants, which have resulted in margin calls from defendants to post additional margin, threats of sale by defendants for failure to post such margin, and sale of some of the securities by Defendants.

85. It was the Defendants that were obligated to provide the terms, position, rights and privileges of different classes of securities; furthermore, materials and contracts, balance sheets for at least (3) fiscal years; profit and loss statements, and further financial statements which the Commission may deem necessary or appropriate for the protection of investors.

86. Defendants had a "duty of care" to the Plaintiffs and willfully neglected to exercise that duty.

## COUNT VI

### CIVIL CONSPIRACY UNDER 18 U.S.C. § 371

87. Plaintiffs incorporate by reference the factual allegations contained in Paragraphs 51 through 58.

88. The factual misrepresentation and omission set forth in paragraphs 51-58 were material, in that there is a "substantial likelihood" that the Plaintiffs would have considered the misrepresentation and omitted facts important in deciding whether to enter into the aforementioned agreement.

89. At the time, Defendants induced Plaintiffs to purchase the subject shares of the said Fidelity Investments account, Plaintiffs did not know that the material representations set forth in Paragraphs 51-58 were true or that the written prospectus or representation made to Plaintiffs by Defendant regarding the funds existed by Defendants failing to disclose the material information set forth in Paragraphs 51-58.

90. Defendant and its officers, directors, agents and assigns conspired either to commit the offense against the Plaintiffs and the United States by doing a lawful act by unlawful means, by doing the above mentioned overt act in pursuance of the conspiracy, and damages the Plaintiffs as a result of the acts done in furtherance of the conspiracy to defraud, also see *Pub.L.103-322, 108 Stat., United States v. Walter, 1923, 44 S. Ct. 10, 263 U.S. 15, 68 L. Ed. 137.*

## COUNT VII

### RESCISSION (Recoupment Claim)

91. Plaintiffs entered into a Mortgage and "Note" transaction with the Defendants which has raised questions as to the financial practices and effect of the existing documents.

92. The parties closed on the Mortgage on March 25th, 2007.

93. The existence of fraud, mutual mistake, false representations, impossibility of performance, or other grounds are appropriate for rescission or cancellation;

94. Plaintiffs have rescinded the contract and notified the other party to the contract of such rescission;

95. Plaintiffs have received benefits from the contract, he should further allege an offer to restore these benefits to the party furnishing them, if restoration is possible;

96. Lastly, that the Plaintiffs have no adequate remedy at law.

## COUNT VIII

### SCIENTER (INTENT TO MISLEAD)

97. Plaintiffs incorporate by reference the factual allegations contained in Paragraph 1 through 58.

98. At all relevant times mentioned in the complaint the Defendants at no time mentioned the truth as to the securitized transaction which took place on Wall Street, then further alleged that the original "Note" was destroyed or was lost or stolen.

99. Plaintiffs have repeatedly in the past requested for verification of a debt which was subject to collection, when in fact was contrary, therefore, misrepresented as a debt and not as a security which was intended to deceive the Plaintiffs.

**100.** Plaintiffs have made efforts to mitigate the harm caused, when the Defendants committed misrepresentation, therefore, damages may be recovered, for failing to offset the account by liquidating the Fidelity Account.

**101.** During the intercourse of the transaction Defendants recklessly provided covenants in their "Mortgages" which were designed to mislead consumers by stating the "Note" may be sold to multiple lenders and services multiple times, however, failed to specifically state how many times it was to be transferred and to whom; the contract in dispute lacks the specificity as to any association with Wall Street.

**102.** Defendants' "reckless" behavior is unfavorable to the Plaintiffs and to their detriment upon which they relied.

103. Defendants' reckless actions and dilatory conduct also conflict with state and federal usury laws, as well as, Fair Debt Collection Practices.

## PRAYER

Plaintiffs request judgment against defendants, jointly and severally:

A. For damages in the sum within the jurisdictional limits of this court plus such further sums as damages as may in the further, pending the trial of this action, occur;

B. For prejudgment interests as provided by law;

C. For punitive or exemplary damages in an amount no less than $25,000.00. Against defendant NationPoint, B of A, Lasalle, Merrill Lynch, BAC, NLS, HLS, TD, Fidelity Title, MERS in an amount no less than $15,000.00 against the above mentioned parties;

D. Declare Defendants to have engaged in a civil conspiracy to inflict injury upon the Plaintiffs, and to therefore be jointly and severally liable for all damages awarded by the Court without allocation, apportionment, or limitation of liability;

E. Enjoin Defendants from committing any further acts in furtherance of said conspiracy;

F. Award Plaintiffs compensatory and incidental damages in an amount not less than $85,000.00;

G. Award Plaintiffs treble damages in such amount as the Court may deem appropriate to penalize Defendants for their intentional and malicious acts of misconduct;

H. Award Plaintiffs the costs of this action and any subsequent appeal, together with such other relief, not necessarily limited to pecuniary relief, as the Court may deem Plaintiffs entitled to receive;

I. Foreclose on the Security Interest;

J. For reasonable attorney's fees;

K. For cost of suit; and

L. For any and all other further relief may be proper.

Date: _1/3/2011_

Respectfully Submitted,

_C. Authorized Agent, Trustee_

Cheryl Lee Gehron, Authorized Agent, Trustee
25079 Portica Court
Wildomar, California 92595
760-533-1296

## DEMAND FOR JURY TRIAL

Plaintiff moves this court pursuant to Fed.R.Civ.P. Rule 38 *"Jury Trial of Right"* and thereby demand a Jury Trial. The undersigned certifies that a copy hereof has been furnished to the parties listed in the Certificate of Service.

By _C. Authorized Agent, Trustee_

Cheryl-Lee: Gehron, Authorized Agent, Trustee

COMPLAINT UNDER SECURITIES EXCHANGE ACT OF 1934-CHURNING ACCOUNT

# CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was furnished by U.S. Mail, Hand Delivery, and Process Server to the below mentioned on this 3rd day of January, 2011.

NATIONPOINT, N.A.,
NATIONPOINT LOAN SERVICES, and
HOME LOAN SERVICES, INC.
c/o HOME LOAN SERVICES, INC.
150 ALLEGHENY CENTER MALL
PITTSBURGH, PA 15230-1838

FIRST FRANKLIN FINANCIAL CORPORATION
4750 ASHWOOD DRIVE
CINCINNATI, OH 45241

LASALLE BANK, N.A.,
MERRILL LYNCH,
BAC HOME LOAN SERVICING, LP,
FIRST FRANKLIN LOAN SERVICES (HLS), and
BANK OF AMERICA, N.A.
c/o BANK OF AMERICA, N.A.
100 NORTH TRYON STREET
CHARLOTTE, N.C. 28202

T.D. SERVICE COMPANY
1820 E. FIRST ST., SUITE 210
SANTA ANA, CA. 92705

FIDELITY NATIONAL TITLE COMPANY
601 RIVERSIDE AVENUE
JACKSONVILLE, FL. 32204

FMR, L.L.C. FIDELITY INVESTMENTS
82 DEVONSHIRE STREET
BOSTON, MA. 02109-3605

SEC DIVISION OF ENFORCEMENT
100 F STREET N.E.
WASHINGTON, D.C. 20549

1  UNITED STATES DISTRICT COURT
2  CENTRAL DISTRICT
   3470 TWELFTH STREET
3  RIVERSIDE, CA. 92501

4  MERS (MORTGAGE ELECTRONIC REGISTRATION SYSTEM, INC.)
5  3300 S.W. 34TH AVENUE, SUITE 101
   OCALA, FL. 34474

6

7  By:

8      Cheryl Lee Gehron, Authorized Agent, Trustee

## VERIFICATION

STATE OF CALIFORNIA

COUNTY OF *Riverside*

BEFORE ME, the undersigned authority, on this day personally appeared, Cheryl-Lee: Gehron, Authorized Agent, Trustee for the Beneficiary who under oath stated that she is the representative on whose behalf the foregoing Complaint is filed, that she is legally competent to make this Verification, which is based on her personal knowledge, and that the factual statements contained in Paragraphs 1-103 of the foregoing Complaint are true and correct.

By: *C. Authorized Agent, Trustee*

Cheryl-Lee: Gehron, Authorized Agent, Trustee

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California

County of __RIVERSIDE__ }

On __1/3/2011__ before me, __RANDALL E. CAMPBELL, NOTARY PUBLIC__
Date                              Here Insert Name and Title of the Officer

personally appeared __CHERYL-LEE GEHRON__
                                Name(s) of Signer(s)

RANDALL E. CAMPBELL
Commission # 1727474
Notary Public - California
Riverside County
My Comm. Expires Mar 26, 2011

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____
                        Signature of Notary Public

Place Notary Seal Above

---

## OPTIONAL

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

### Description of Attached Document

Title or Type of Document: __Verification__

Document Date: __1/3/10__                    Number of Pages: __23__

Signer(s) Other Than Named Above: _____

### Capacity(ies) Claimed by Signer(s)

Signer's Name: _____
☐ Individual
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

RIGHT THUMBPRINT
OF SIGNER
Top of thumb here

Signer Is Representing: _____
_____

Signer's Name: _____
☐ Individual
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

RIGHT THUMBPRINT
OF SIGNER
Top of thumb here

Signer Is Representing: _____
_____

## FOOTNOTES

(1) Lewis, Holden (18 April 2007). "Moral hazard' helps shape mortgage mess" Bankrate.com

(2) "Originate-to-Distribute" model and the subprime mortgage crisis http://papers.ssrn.com

(3) Demyanyk, Yuliya; Van Hemert, Otto (19 August 2008) "Understanding the Subprime Mortgage Crisis". Working Paper Series. Social Science Electronic Publishing

(4) "Nicole Gelinas (1 January 2009) "Can the Fed's Uncrunch Credit?" City-journal.org

(5) Brookings Institute- U.S. Financial and Economic Crisis June 2009 PDF Page 14 http://www.brookings.edu/papers/2009/0615_economic_crisis_bailey_elliott.aspx

(6) http://www.federalreserve.gov/newsevents/testimony/bernanke20090224a.htm

(7) Salmon, Felix (http://www.felixsalmon.com) (2009-02-23) "Recipe for Disaster: The Formula that Killed Wall Street"

(8) "Lessons from the Crisis" (http://www.pimco.com) US House of Representatives Committee on Government Oversight and reform (22 October 2008) http://oversight.house.gov

(9) Labaton, Stephen (2008-09-27), "SEC Concedes Oversight Flaws" (http://www.nytimes.com/2008/09/27sec.html?em

(10) Labaton, Stephen (2008-10-03). "The Reckoning"

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| GEORGE J. GEHRON / CHERYL L. GEHRON | NATIONPOINT / BANK OF AMERICA, N.A. / LASALLE BANK, N.A. / MERRILL LYNCH / BAC HOME LOANS SERVICING, LP / T.D. SERVICE CO. / FIDELITY NATION TITLE CO. / MERS / et al. |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| Cheryl Lee Gehron, Authorized Agent, Trustee (951-677-6764) 25079 Portica Court Wildomar, CA 92595 | |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff     ☑ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant     ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify):  ☐ 6 Multi-District Litigation  ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:  JURY DEMAND:** ☑ Yes  ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes  ☑ No     ☑ MONEY DEMANDED IN COMPLAINT: $ OVER $25,000

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
15 USC 77 q (a) (3), 17 CFR 240-10b, 18 USC - COMPLAINT UNDER SECURITIES EXCHANGE ACT OF 1934 - CHURNING - SECURITIES FRAUD

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☑ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | | SOCIAL SECURITY |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | REAL PROPERTY | | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | REAL PROPERTY | ☐ 210 Land Condemnation | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | IMMIGRATION | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | ☐ 462 Naturalization Application | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 240 Torts to Land | ☐ 463 Habeas Corpus-Alien Detainee | | | FEDERAL TAX SUITS |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | ☐ 290 All Other Real Property | | | | ☐ 871 IRS-Third Party 26 USC 7609 |

**ED CV 11 - 00012 DOC (DTBx)**

FOR OFFICE USE ONLY:    Case Number: _____

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

JAN - 3 2011

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☐ No ☑ Yes
If yes, list case number(s): CV 10-02244, CV 10-06140, CV 10-16981, CV 10-02051, CV 10-07833 & CV 10-08823 (Informa Pauperis Not Approved-Refiling)

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply)   ☑ A. Arise from the same or closely related transactions, happenings, or events; or
         ☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
         ☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
         ☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐   Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| RIVERSIDE COUNTY<br>RIVERSIDE COUNTY | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐   Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | PENNSYLVANIA, OHIO, NORTH CAROLINA, ORANGE COUNTY, FLORIDA, FLORIDA |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
    **Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| RIVERSIDE COUNTY | |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): _Authorized Agent, Auster_ Date 1/3/2011

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

AO 440 (Rev. 12/09)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

### for the

GEORGE J. GEHRON *and* CHERYL L. GEHRON

_____

*Plaintiff*

NATIONPOINT *(a/k/a FIRST FRANKLIN (see attached)*

_____

*Defendant*

)
)
)
)
)
)
)

**ED ) CV 11 - 00012**

Civil Action No.

DOC
(DTBx)

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

> Cheryl Lee Gehron, Authorized Agent, Trustee
> 25079 Portica Court
> Wildomar, CA  92595

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

CLERK OF COURT

Date:  JAN - 3 2011
_____

_____
*Signature of Clerk or Deputy Clerk*

L. MURRAY

AO 440 (Rev. 12/09)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____.

❑ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❑ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❑ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❑ I returned the summons unexecuted because _____ ; or

❑ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $ ____0.00____ .

I declare under penalty of perjury that this information is true.


Date: _____         _____
                                                        *Server's signature*

                                                  _____
                                                        *Printed name and title*


                                                  _____
                                                        *Server's address*

Additional information regarding attempted service, etc:

George Julius Gehron
Cheryl Lee Gehron
25079 Portica Court
Wildomar, California 92595
In Pro Per

IN THE UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

RIVERSIDE DIVISION

| | |
|---|---|
| GEORGE J. GEHRON and<br>CHERYL L. GEHRON,<br><br>       Plaintiffs,<br>    vs.<br><br>NATIONPOINT( a/k/a FIRST FRANKLIN<br>FINANCIAL CORPORATION a/k/a<br>MERRILL LYNCH BANK & TRUST CO.),<br>BANK OF AMERICA, N.A., LASALLE<br>BANK, N.A., MERRILL LYNCH, BAC<br>HOME LOANS SERVICING, LP, a/k/a<br>NATIONPOINT LOAN SERVICES and<br>HOME LOAN SERVICES, INC. d/b/a FIRST<br>FRANKLIN LOAN SERVICES (HLS), T.D.<br>SERVICE COMPANY,<br>FIDELITY NATIONAL TITLE COMPANY,<br>MERS (MORTGAGE ELECTRONIC<br>REGISTRATION SYSTEMS, INC.), et al.<br><br>       Defendants. | Case No.:_____<br><br>**COMPLAINT UNDER SECURITIES**<br><br>**EXCHANGE ACT OF 1934- CHURNING**<br><br>**OF ACCOUNT** |

Plaintiff(s), GEORGE J. GEHRON and CHERYL L. GEHRON ("GEHRON"), for its complaint

against defendants NATIONPOINT, ("NationPoint"), BANK OF AMERICA, N.A. ("B of A"),

LASALLE BANK, N.A. ("Lasalle"), MERRILL LYNCH ("Merrill Lynch"), BAC HOME

LOANS SERVICING, LP ("BAC")  a/k/a NATIONPOINT LOAN SERVICES ("NLS") and

COMPLAINT UNDER SECURITIES EXCHANGE ACT OF 1934-CHURNING ACCOUNT

1

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge David O. Carter and the assigned discovery Magistrate Judge is David T. Bristow.

The case number on all documents filed with the Court should read as follows:

## EDCV11- 12 DOC (DTBx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

==========================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [ ] **Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | [ ] **Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | [ ] **Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |
|---|---|---|

Failure to file at the proper location will result in your documents being returned to you.